IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EQUINE LEGAL SOLUTIONS, PC,<br><br>Plaintiff,<br>v.<br><br>FIRELINE FARMS, INC., KAIHLY GONZALEZ, and DIGITALOCEAN, LLC,<br><br>Defendants. | Case No.: 3:22-cv-01850-AN<br><br>OPINION AND ORDER |

Plaintiff Equine Legal Solutions, PC, brings this copyright infringement claim against defendants Fireline Farms, Inc., Kaihly Gonzalez, and DigitalOcean, LLC. Defendant DigitalOcean filed this Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, DigitalOcean's motion is GRANTED and all claims against DigitalOcean are DISMISSED.

## LEGAL STANDARD

In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A defendant's motion may be evaluated by considering evidence presented in affidavits. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When the motion is assessed based on the pleadings and affidavits, rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). Although a plaintiff may not rest solely on the bare allegations of their complaint, without an evidentiary hearing, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the parties' affidavit statements are resolved in the plaintiff's favor. *Id.*

## BACKGROUND

1

Plaintiff Equine Legal Solutions is an Oregon-based equine law firm that provides various legal forms for horse-related transactions on its website, which may be downloaded for a fee. All such purchases are subject to a License Agreement which specifies Oregon as the proper venue for all legal actions brought in connection with the agreement, and which prohibits purchasers from posting the forms on the Internet. Compl. ¶¶ 8-9, 12. Defendant DigitalOcean is a multinational cloud infrastructure provider incorporated in Delaware and headquartered in New York. DigitalOcean operates data centers worldwide, including in New York, California, Canada, Germany, and the Netherlands; it maintains no data centers, or other physical locations, in Oregon. Suppl. Shapiro Decl. ¶ 2; Shapiro Decl. ¶ 2. DigitalOcean employs approximately 560 employees in the United States, and 1,300 employees world-wide. Suppl. Shapiro Decl. ¶ 4. DigitalOcean's business model allows customers to unilaterally sign up for website hosting services and immediately access and utilize those services, and DigitalOcean serves approximately 677,000 customers in more than 190 countries. *Id.* at ¶¶ 3, 5.

Equine Legal Solutions' copyright infringement claim arises out of a transaction made by defendant Gonzalez. Defendant Gonzalez purchased and downloaded forms from Equine Legal Solutions' website, and Equine Legal Solutions alleges that those forms were posted on defendant Fireline Farms' website, firelinefarms.com ("Fireline Website") in violation of its copyright. Compl. ¶¶ 12-13. As relevant to this motion, from March 4, 2022, through November 2022, Equine Legal Solutions sent numerous Digital Millennium Copyright Act ("DMCA") complaint takedown notices to all defendants. *Id.* at ¶¶ 32-33, 38-39. DigitalOcean emailed Equine Legal Solutions regarding the takedown notices on at least two occasions. *Id.* at ¶¶ 34-35.

Equine Legal Solutions' primary allegation against DigitalOcean is that it engaged in copyright infringement by providing website hosting services for the Fireline Website where the forms were posted. DigitalOcean argues that it is not subject to specific or general personal jurisdiction in Oregon, and thus must be dismissed from this lawsuit.

**DISCUSSION**

A.      **Personal Jurisdiction**

When no federal statute governs personal jurisdiction, the law of the forum state applies. *Boschetto*, 539 F.3d at 1015. Oregon's long-arm statute permits this court to exercise personal jurisdiction within the limits of federal constitutional due process. Or. R. Civ. P. 4(L). Federal due process jurisprudence requires that a nonresident defendant have "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be established through general personal jurisdiction or specific personal jurisdiction.

1.      *General Jurisdiction*

Equine Legal Solutions alleges that DigitalOcean is subject to general personal jurisdiction in Oregon. General jurisdiction applies to a nonresident corporation when a corporation's activities in the forum state are unrelated to the underlying cause of action, but the activities are continuous and systematic, and so substantial that the corporation is essentially at home in the forum state. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). A corporate defendant is generally considered "at home" where it is headquartered and incorporated; however, in exceptional cases, the defendant's general business contacts with a state may be so continuous and systematic "as to render it essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). Whether a corporation is "at home" depends on the magnitude of the corporation's in-state contacts in light of the corporation's activities in their entirety, nationwide and worldwide. *Id.* at 139 n.20. The defendant's contacts are assessed based on their "longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix Photo*, 647 F.3d at 1224 (internal quotation marks omitted).

Equine Legal Solutions argues that DigitalOcean is "at home" in Oregon because it has been registered with the Oregon Secretary of State to do business in Oregon as a foreign corporation since 2017. *See Under A Foot Plant, Co. v. Exterior Design, Inc.*, No. 6:14-cv-01371-AA, 2015 WL 1401697, at *3 (D. Or. Mar. 24, 2015) (finding no general jurisdiction over defendant because defendant was not

"licensed to do business in Oregon, [did] not have any agents or employees in Oregon, [did] not own any real estate or operate any facilities in Oregon, and [did] not own any Oregon bank accounts"). Further, Equine Legal Solutions highlights that DigitalOcean (1) provides web hosting services for at least eight Oregon entities, (2) has at least eleven employees who reside in Oregon, (3) markets its services to Oregon-based startup businesses through Portland State University's Accelerator program, and (4) was both a vendor and presenter at least one Oregon trade show.

Equine Legal Solutions has not established a *prima facie* case of general jurisdiction because DigitalOcean's activities within Oregon are not so substantial, continuous, or systematic, that it is essentially at home here. As an initial matter, registration with the Oregon Secretary of State and the designation of an agent for service of process is not an indication that a corporation has consented to personal jurisdiction. *See Lanham v. Pilot Travel Ctrs., LLC*, No. 03:14-cv-01923-HZ, 2015 WL 5167268, at *4 (D. Or. Sept. 2, 2015) (holding that compliance with Oregon's business registration and agent designation statutes is insufficient to establish general jurisdiction over a nonresident corporation). As for DigitalOcean's other contacts with Oregon, general jurisdiction has been denied over nonresident corporations with business contacts that were far more substantial than DigitalOcean's contacts with Oregon. *See, e.g.*, *Daimler*, 571 U.S. at 140 (finding no general jurisdiction in California over Germany-based defendant that had regional office in California and made ten percent of all U.S. sales in California); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (finding no general jurisdiction in Oregon over Netherlands-based defendant that had twenty to twenty-seven employees based in Oregon, had business trips in Oregon, and entered into contracts in Oregon).[1]

DigitalOcean's activities must be assessed in the context of its nationwide and worldwide

---

[1] Equine Legal Solutions argues that both *Daimler* and *Ranza* are distinguishable from this case because those cases involved harm that occurred in foreign countries and plaintiffs who were residents of foreign countries. However, those facts do not change the ultimate inquiry: Whether the corporation's contacts with the forum state are so substantial that it is essentially at home there. The plaintiff's residency is inapposite, as is where the harm occurred, because general jurisdiction focuses on the defendant's contacts with the forum state, not the plaintiff's, and where the harm occurred is not a consideration under general jurisdiction analysis. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

activities because a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. DigitalOcean operates data centers in numerous locations but does not operate a single data center in Oregon. DigitalOcean has approximately 560 employees in the United States, making the eleven based in Oregon only 1.8 percent of its total employee base in the United States. Additionally, each of those eleven employees works remotely because DigitalOcean does not maintain physical branches or offices in Oregon. Although Equine Legal Solutions has identified eight Oregon entities that use DigitalOcean's webhosting services, DigitalOcean provides services to approximately 677,000 customers in over 190 countries, making those eight Oregon-based customers a miniscule portion of its customer base. Additionally, DigitalOcean's platform uses a self-service model, meaning that customers can sign-up online to receive hosting services without solicitation by DigitalOcean. Permitting general jurisdiction on that basis could subject DigitalOcean to general jurisdiction in essentially every state where individuals use its services, regardless of whether DigitalOcean sought out that customer base.

Equine Legal Solutions identifies two instances where it alleges that DigitalOcean has solicited business in Oregon. First, DigitalOcean works with Portland State University's Accelerator program, a membership-based program that supports start-up businesses. However, Equine Legal Solutions makes no allegations as to how much revenue DigitalOcean generates from that partnership, if any, nor does it acknowledge that DigitalOcean's participation involves only an extension of the benefits of a startup program that DigitalOcean already runs, Hatch, to the Accelerator program members. That is, DigitalOcean has not created an exclusive partnership or provided a unique benefit to Accelerator members, but rather it provides access to a program that DigitalOcean offers nationwide. Given that DigitalOcean's startup program, Hatch, is available broadly, the dearth of information regarding what percentage of members in the Hatch program are from the Accelerator program provides little insight into how significant that relationship is to DigitalOcean's overall revenue and customer base. Second, DigitalOcean appeared and presented at an Oregon trade show promoting its product. However, the trade show occurred in 2018–nearly five years ago, and Equine Legal Solutions makes no allegations that DigitalOcean has continued attending Oregon trade shows, or otherwise solicited business in Oregon. Ultimately, the solicitation evidence

5

provided by Equine Legal Solutions does not indicate that DigitalOcean's contacts with Oregon, in the context of its overall business activity, are so substantial as to render DigitalOcean at home in Oregon.

In sum, Equine Legal Solutions has not made a *prima facie* showing of general jurisdiction over DigitalOcean. DigitalOcean's business activities in Oregon are a miniscule portion of its overall business activities, and DigitalOcean has not maintained continuous and systematic contacts with Oregon that are so substantial that it is essentially at home. Thus, DigitalOcean's contacts with Oregon do not justify the exercise of general jurisdiction, even when considered collectively.

   2.   *Specific Jurisdiction*

Equine Legal Solutions also argues that DigitalOcean is subject to specific personal jurisdiction in Oregon. Specific personal jurisdiction exists when a nonresident corporation has sufficient minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). A court may exercise specific jurisdiction over a nonresident defendant only where the "defendant's suit-related conduct [ ] create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted).

The Ninth Circuit utilizes a three-pronged test to assess specific jurisdiction: (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two prongs, and, if the plaintiff successfully does so, then the defendant bears the burden of proving that exercising jurisdiction is not reasonable. *Id.*

For the first prong, when the case primarily sounds in tort, like this case, a purposeful direction analysis applies. *See Mavrix Photo*, 647 F.3d at 1228 (noting that copyright infringement claim

is a tort-like cause of action). The Ninth Circuit uses a three-part "effects" test based on *Calder v. Jones*, 465 U.S. 783, 789 (1984), to assess whether a nonresident defendant purposefully directed its activities to the forum state. The effects test examines the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Walden*, 571 U.S. at 285. Thus, a defendant's link with the forum state cannot be based solely on the defendant's conduct that was directed toward the plaintiff, or otherwise solely on the plaintiff's own contacts with the forum state. *Id.*

Under *Calder*, purposeful direction exists if the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, that (3) caused harm that the defendant knew was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). An intentional act is "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Equine Legal Solutions appears to allege that DigitalOcean provided hosting services for the Fireline Website where Equine Legal Solutions' copyrighted material was publicly posted. By entering into a business agreement with Fireline Farms to providing web hosting services, DigitalOcean did commit an intentional act. Thus, the first prong of this test is satisfied.

Under the express aiming prong, the nonresident defendant must have expressly aimed its actions at the forum state. The "express aiming" analysis depends on the specific type of wrongful conduct at issue. *Id.* at 807. In the context of internet websites, the Ninth Circuit has determined that operating a passive website alone cannot satisfy the express aiming prong; however, operating a passive website "in conjunction with 'something more'" can be sufficient. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1153-54, 1158 (9th Cir. 2006); *see Mavrix Photo*, 647 F.3d at 1241 ("Not all material placed on the Internet is solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed.").

The facts alleged by Equine Legal Solutions do not establish that DigitalOcean expressly aimed its suit-related actions toward Oregon. Equine Legal Solutions argues that DigitalOcean

purposefully availed itself of the benefits of Oregon law[2] by (1) obtaining a license to do business in Oregon, (2) hiring employees in Oregon, (3) targeting Oregon startup business through one of its marketing programs, and (4) attending a trade show in Oregon, at which DigitalOcean gave presentations to promote its business. Equine Legal Solutions further argues that its copyright claim arose in connection with DigitalOcean's business in a similar manner to *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021), where the Ninth Circuit found that the defendant's contacts with the forum were undertaken for the purpose of promoting the beauty products that the plaintiff alleged infringed on its trademark rights.

Equine Legal Solutions misconstrues the basis for specific personal jurisdiction. Specific jurisdiction applies when the defendant's *suit-related* conduct is expressly aimed at the forum state. None of DigitalOcean's business contacts with Oregon, as described by Equine Legal Solutions, implicate or relate to DigitalOcean's allegedly wrongful conduct in this case. The website at issue in this case is related to a Florida-based business, and DigitalOcean provided the hosting services through a third-party entity based in Alabama. DigitalOcean did not solicit Fireline's business in Oregon, nor did it provide hosting services in or through entities based in Oregon. DigitalOcean's only contacts with Oregon, as related to this case, are its communications with Equine Legal Solutions regarding the DMCA takedown notices. However, any connection to Oregon created by those communications occurred "only because it happened to be where Plaintiff[] resided." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017). A connection that does not involve the forum state itself, but rather solely has some effect on a party who resides there, is an insufficient basis for specific personal jurisdiction. *Id.* at 1145.

Further, Equine Legal Solutions' reliance on *Ayla* misses the mark. Though Equine Legal Solutions argues that the cases are similar because its claim relates to DigitalOcean's business, that is not the reason that specific jurisdiction applied to the defendant in *Ayla*. In *Ayla*, the Ninth Circuit upheld the exercise of specific jurisdiction over a foreign defendant because the plaintiff's trademark infringement

---

[2] As stated previously, copyright infringement cases use a purposeful direction analysis because it is a case that sounds in tort. Equine Legal Solutions' reference to purposeful availment is still analyzed under purposeful direction jurisprudence.

claim arose out of and related to the defendant's contacts with the United States. Specifically, the plaintiff had based its specific jurisdiction argument on the defendant's promotion, sale, and distribution of beauty products *that bore the allegedly infringing trademark* in the United States. Conversely, DigitalOcean's contacts with Oregon to promote its business did not implicate, relate to, or in any way connect to Equine Legal Solutions' copyright claim, or the materials underlying that claim. DigitalOcean's passive maintenance of website hosting services for the Fireline Website is insufficient to establish that DigitalOcean expressly aimed its conduct at Oregon. *See Pebble Beach*, 453 F.3d at 1158 ("[W]e reject [ ] any contention that a passive website constitutes express aiming."). The only connection that DigitalOcean has to Oregon, in the context of its conduct in this case, is Equine Legal Solutions. That connection is insufficient to establish specific jurisdiction. *Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

Because Equine Legal Solutions cannot establish that DigitalOcean's suit-related conduct was expressly aimed at Oregon, it cannot show that DigitalOcean purposefully directed its activities at the forum state. The exercise of specific personal jurisdiction over DigitalOcean is not justified and would offend principles of due process. *Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

**B.      Jurisdictional Discovery**

Equine Legal Solutions has also requested leave to conduct limited discovery regarding DigitalOcean's contacts with Oregon. Discovery requests related to personal jurisdiction may be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1020 (internal quotation marks omitted). Where a request for discovery is based on "little more than a hunch that it might yield jurisdictionally relevant facts," it is appropriate to deny the request. *Id.*; *see Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by denying jurisdictional discovery request when plaintiffs "believed" that discovery would enable them to demonstrate sufficient business contacts with forum state).

Here, no pertinent facts are disputed, and Equine Legal Solutions provides no details regarding what additional information it believes further discovery will yield, or how facts garnered through discovery would support a personal jurisdiction basis or contradict DigitalOcean's affidavits. Even when taking the allegations in Equine Legal Solutions' affidavits as true, it has not established a plausible basis for personal jurisdiction over DigitalOcean in this court. It is unlikely that additional facts will create a plausible basis, and Equine Legal Solutions' request for jurisdictional discovery is, essentially, based on "little more than a hunch." Therefore, Equine Legal Solutions' request for discovery is DENIED.

## CONCLUSION

Accordingly, Plaintiff Equine Legal Solutions' request for jurisdictional discovery is DENIED, Defendant DigitalOcean's Motion to Dismiss for Lack of Personal Jurisdiction, ECF [13], is GRANTED, and all claims against Defendant DigitalOcean are DISMISSED.

IT IS SO ORDERED.

DATED this 18 day of April, 2023.

Adrienne Nelson
United States District Judge